Filed 7/14/21  P. v. Toledo CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RIGOBERTO FRANCISCO TOLEDO,<br><br>    Defendant and Appellant. | G059559<br><br>(Super. Ct. No. 02NF1122)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Cheri T. Pham, Judge.  Affirmed.

David P. Lampkin, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

\*     \*     \*

Defendant Rigoberto Francisco Toledo appeals from the trial court's denial of his petition for resentencing filed pursuant to Penal Code section 1170.95.[1] That petition was denied on October 16, 2020.

We appointed counsel to represent Toledo on appeal. After conducting his analysis of potential appellate issues, counsel has informed us in his declaration that he has reviewed the appellate record, and consulted with a staff attorney at Appellate Defenders, Inc. Counsel then filed a brief pursuant to the procedures set forth in *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738. While not arguing against his client, counsel set forth the facts of the case and advised us he was unable to find an issue to argue on defendant's behalf. Counsel then advised Toledo of his right to file a written argument on his own behalf; he has not done so.

## FACTS

The facts relevant to this appeal can best be summarized by excerpting from our prior opinion in which we affirmed Toledo's second-degree murder conviction. (*People v. Toledo* (June 16, 2004, G031808) [nonpub. opn.] (*Toledo*).)

"Late in the afternoon of March 24, 2002, an employee of the Bakers Square Restaurant in Anaheim was walking through the parking lot after finishing her shift for the day. She noticed a man on a cell phone walking away from the parking lot. She also saw a tan van backed into a parking space in a remote area of the lot, and through the van's open sliding door she saw what appeared to be a pillow bobbing up and down. She reported the incident to her manager.

"The manager went outside to inspect the van and heard moaning from inside. He observed what appeared to be a person inflating something inside the van. Alarmed, he notified the police and waited outside for their arrival.

---

[1] All further statutory references are to the Penal Code.

2

"The police arrived and discovered a man bound in duct tape lying on the floor of the van. Toledo was sitting in the driver's seat of the van. When he noticed the officers, he appeared surprised and frightened . . . . He exited the van, and despite police commands to lie down and remain still, took off running. One of the officers chased him for about a half mile before losing him . . . .

"Inside the van, the victim . . . was lying motionless, bound hand and foot by duct tape and covered with a sleeping bag. An officer removed the covering and found a thick plastic bag tightly knotted around the victim's head. The officer ripped the bag off, and also found duct tape inside the victim's mouth that had to be cut out with a knife. After attempts at resuscitation, the victim died six hours later.

"The van in which the victim was found was registered to Toledo. Inside, the police found a plastic bag containing marijuana, multiple pagers, two cell phones, a key to another vehicle, a wallet, a black suitcase, both a rubber and a latex glove, and the victim's Canadian passport. In addition, two cards in the wallet appeared to reflect drug transactions . . . .

"The key found in the tan van operated another white van found parked at an area motel. After placing the van under surveillance, the police searched the motel room of the two men seen entering this van. Inside their room, they found two large black duffel bags with a total of 41 pounds of vacuum-sealed bags of marijuana, with a total street value of around $250,000. . . . The victim's fingerprint was found on one of the bags of marijuana in the motel.

"The police executed a search warrant at Toledo's home. They found him sleeping outside in a vehicle, hidden under a pile of blankets, and took him into custody. Inside his house, the police discovered . . . pay/owe sheets recording various drug transactions.

"Toledo initially was appointed a public defender, but then retained counsel and pleaded not guilty to a single count of murder. Toledo took the stand at trial and

3

testified an acquaintance, Chi Chau, asked for a ride to meet someone and also asked to borrow "moving supplies." Toledo did not know Chau was a drug dealer. Toledo gave Chau some duct tape and drove him to the Bakers Square Restaurant . . . . [The victim], who Toledo did not know, met them in the parking lot and entered the van.

"From the driver's seat, Toledo heard a 'thump' and looked back to see [the victim] on the floor. Toledo tried to intervene, but Chau pushed him away. Chau pointed a gun at [the victim] and at Toledo and warned 'he needed the money' and 'was going to get it one way or another . . . .' Chau ordered Toledo to bind the victim's hands with duct tape; when Toledo refused, Chau threatened to shoot him. Toledo complied. . . . Then came moaning, two thumps, an odor like someone had 'gone to the restroom.' Chau started to drive the van away, and then stopped. He threatened to kill Toledo and his family if he spoke to the police. . . . Toledo ran from the police because he was afraid Chau would kill his family if he talked to officers." (*Toledo, supra*, G031808, fn. omitted.)

The instructions provided to the jury included CALJIC No. 3.01 (aiding and abetting) and CALJIC No. 8.11 (express and implied malice aforethought). The jury found Toledo guilty of second degree murder (§ 187, subd. (a)). In a separate bifurcated proceeding, the trial court found it true that Toledo had suffered a prior strike felony conviction (§§ 667, subds. (d) & (e)(1), 1170.12, subds (b) & (c)(1)); a prior serious felony conviction (§§ 667, subd. (a)(1), 1192.7, subd. (c)); and that he had served a prior state prison sentence (§ 667.5, subd. (b)). The court then sentenced Toledo to an indeterminate term of 30 years to life in state prison (15 years to life for second degree murder doubled to 30 years to life pursuant to California's Three Strikes law).

After counsel informed us he could not find any issue to argue on Toledo's behalf on appeal, he suggested we examine two potential issues de novo:

1)      "Since appellant's petition is valid on its face, was it error to find that it does not set forth a prima facie case?"

4

2) "When the court found that appellant 'was convicted of second degree murder as a direct aider and abettor who acted with implied malice,' was the court engaging in fact-finding that should have been preceded by an order to show cause and a hearing at which the parties could present evidence as described in section 1170.95, subdivision (d)?"

## DISCUSSION

We have examined the entire record in this case and, like counsel, have not found an arguable issue on appeal.

In *People* v. *Gentile* (2020) 10 Cal.5th 830 (*Gentile*), the California Supreme Court discussed the statutory scheme created by Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), which resulted in the creation of Penal Code section 1170.95.

"Senate Bill 1437 'amend[ed] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' (Stats. 2018, ch. 1015, § 1, subd. (f).)

"To further that purpose, Senate Bill 1437 added three separate provisions to the Penal Code. First, to amend the felony-murder rule, Senate Bill 1437 added section 189, subdivision(e): 'A participant in the perpetration or attempted perpetration of [qualifying felonies] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and

5

acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2'. . . (§ 189, subd. (a).)

"Second, to amend the natural and probable consequences doctrine, Senate Bill 1437 added section 188, subdivision (a)(3) (section 188(a)(3)): 'Except [for felony-murder liability] as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime.'

"Third, Senate Bill 1437 added section 1170.95 to provide a procedure for those convicted of felony murder or murder under the natural and probable consequences doctrine to seek relief under the two ameliorative provisions above." (*Gentile, supra*, 10 Cal.5th at pp. 842-843.)

Pursuant to the procedure created by section 1170.95, the trial court is required to perform an initial prima facie review of information available to it in the record of conviction and the court file to determine whether a petitioning defendant is ineligible for relief as a matter of law. (*People v. Verdugo* (2020) 44 Cal.App.5th, 320, 329-330.) During this process, the trial court may review the felony complaint, information or indictment; the verdict form or documentation related to a negotiated plea; the abstract of judgment; and the opinion related to any direct appeal. (*Ibid*.) If a review of these documents demonstrates the defendant is ineligible for relief, the court may summarily deny the petition.

This is apparently the procedure followed by the trial court here. Our review of this court's opinion on direct appeal confirms that Toledo was tried and convicted on the theory that he acted with implied malice aforethought as an aider and abettor during the events which led to the victim's death. It also confirms Toledo testified in his own defense at trial. During that testimony he admitted he was intimately involved in the acts which led to the victim's death. He never denied that. Rather, he claimed his participation in those acts was coerced. The jury, through its verdict, rejected

6

Toledo's claim of coercion and convicted him of implied malice second degree murder. All of this could be readily, and properly, gleaned by the trial court from the record before it. We therefore conclude, as did Toledo's appellate counsel, that he was as a matter of law ineligible for the relief he sought pursuant to section 1170.95.

After examining the remainder of the record de novo, as we must, we can find no other arguable appellate issue.

## DISPOSITION

The judgment is affirmed.



GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.

7